[File No. 6547.]

DEVILS LAKE STEAM LAUNDRY, a Corporation, Respondent, v. OTTER TAIL POWER COMPANY, a Corporation, Appellant.

(284 N. W. 417.)

Opinion filed February 18, 1939.   Rehearing denied March 15, 1939.

*Traynor & Traynor* and *Field & Field,* for appellant.

192

· F. T. Cuthbert, for respondent.

NUESSLE, Ch. J.   Plaintiff brought this action to restrain the defendant ·from cutting off its electrical service to the plaintiff on account of the nonpayment of the bill therefor at the alleged excessive rates sought to be charged by the defendant.   The defendant, answering, denied the allegations of the complaint with respect to the overcharge and counterclaimed to recover the amount of its bill for the service furnished at the disputed rates.   The trial court found for the plaintiff.   Judgment was entered accordingly and the defendant appeals.

The plaintiff is engaged in operating a laundry and dry cleaning plant in the city of Devils Lake.   The defendant is a corporation engaged in the business of manufacturing, distributing, and selling electricity for light and power purposes.   For some time prior to July 1, 1936, there had been a controversy between the plaintiff and the defendant and others as to the rates to be charged by the defendant for its service.   During this time there was a movement on foot in the city

of Devils Lake to have the city build and operate a power and light plant and an election was held whereby the voters empowered the city commission to proceed in this direction. In July, 1936, the plaintiff and defendant, aiming at an adjustment and settlement of their controversy as to the rates to be charged, entered into a written arbitration agreement whereby the matter of the rates for the light and power to be furnished to the plaintiff was to be submitted to arbitrators and the arbitrators were agreed upon and named. One of them was C. W. McDonnell, a member of the Board of Railroad Commissioners. Pursuant to the terms of this agreement the arbitrators convened, made such investigation as they deemed proper at a hearing held for that purpose, and in August 1936 agreed upon and signed a written award in which they stipulated that they had "mutually agreed to the following rate schedule which shall be effective starting with the billing applicable for the month of July, 1936, and retroactive to July 1, 1936, said agreement and rate schedule to be defined as a temporary Laundry Power rate schedule for Devils Lake, North Dakota, said rate schedule to be effective up to and including July 18, 1937, and to terminate automatically as of that date. This rate schedule to be applied to the total of the electrical services of any classification used by the Devils Lake Steam Laundry." Then followed the rates determined upon together with other provisions relative to the furnishing and discontinuing of the service and the manner in which the same should be billed and paid for.

Thereafter and on the 28th day of September, 1936, the defendant filed with the Board of Railroad Commissioners an electric rate schedule for Devils Lake in accordance with the written award of the arbitrators, which also was filed. This schedule was approved by the board on November 7, 1936, to be effective up to and including July 18, 1937, and to terminate automatically as of that date. In the meantime, after this award was made and prior to the time when the same was filed with and approved by the board, the defendant had adjusted its differences with the city of Devils Lake and obtained a new franchise.

Prior to July, 1936 the Board of Railroad Commissioners had duly established and put into effect rates covering service of the kind furnished by the defendant to the plaintiff in the city of Devils Lake and

these rates have been at all times since and now are in effect execpt as they were modified by the rates fixed by the arbitrators and filed with and approved by the board. The rates originally fixed and in effect, except as thus modified, were appreciably higher than the rates fixed by the award. After the award and the adoption of the schedule drawn pursuant thereto, service was furnished by the defendant and the plaintiff was billed and paid for the same at the rates thus fixed until July 21, 1937. Thereafter the defendant billed the plaintiff at the old rates. The defendant did this on the theory that the rates fixed by the award had automatically terminated on that date and that the old rates had become effective again. The plaintiff refused to pay at these rates but offered to and did pay at the rates fixed by the award. The defendant refused to accept such payments as payments in full. Thereupon the plaintiff, alleging that the defendant threatened to cut off its current, brought the instant action to enjoin the defendant from so doing.

The plaintiff predicates its cause of action on the theory that the rates fixed by the arbitrators and approved by the Board of Railroad Commissioners were to be permanent rates. The defendant defends on the theory that such rates were temporary only and automatically terminated on July 18, 1937, after which time the old rates were again in effect. The defendant, after setting up its defense, further counterclaimed to recover the difference between the charge for the service at the old rates for service furnished after July 21, 1937, and the amount paid by the plaintiff for such service based on the new rates. On the trial this amount was stipulated and if the case on this appeal goes against the plaintiff the defendant will be entitled to judgment in the amount thus stipulated.

The case was tried to the court. Plaintiff contended in the lower court, and contends here, that the rates fixed by the award were in fact permanent rates; that the arbitrators so understood and intended, as did all the parties; that through fraud and deception on the part of the defendant the award did not so recite; that, in any event, there having been no notice given of a change of rates, and the Board of Railroad Commissioners not having approved any such change, the

rates provided in the award and the schedules made pursuant to the award and filed with and approved by the railroad commissioners remained in effect. The trial court found—contrary to the plaintiff's contention—that the rates agreed upon by the arbitrators were intended to be and were temporary only and were to be automatically terminated on July 18, 1937; that both plaintiff and defendant knew and understood this to be so; that the schedule of rates made pursuant to the award and filed with and approved by the Board of Railroad Commissioners was so accepted and approved as temporary only. But the trial court held with the plaintiff that pursuant to chapter 207, Session Laws 1937, no change raising the rates from those fixed by the award and the schedule made pursuant thereto could be made without the thirty-day notice required by this statute, and since no such notice had been given the rates thus fixed continued in effect.

There is some evidence in the record tending to sustain the plaintiff's contention that the arbitrators intended the rates as fixed by their award to be permanent rates. On the other hand, the award speaks positively for itself to the contrary. There is no ambiguity in its terms. It is positive and explicit. The plaintiff insisted that the defendant file a rate schedule in accordance with its terms, yet it is beyond question that the plaintiff as well as the defendant considered the rates fixed by the award to be temporary only. The plaintiff so stated in a letter (the same letter in which it insisted upon the filing of the new schedule) written concerning the matter to Mr. McDonnell of the railroad commission on September 22. Plaintiff therein said, speaking with respect thereto, "They (the defendant) have nothing to complain about and they are bound by our arbitration to comply for one year and in the meantime if I cannot get some agreement from them to make it permanent then I shall make a purchase of a new Diesel engine and cut the power company out completely. . . ." Likewise, the Board of Railroad Commissioners, in approving the rate schedule filed by the defendant with them, so considered it and so noted it in their records. We accordingly hold that the trial court's finding on this question of fact was correct.

There remains then the question as to whether the provisions of chapter 207, Session Laws 1937, supra, are applicable in the instant

case so as to require the notice therein provided before the defendant could charge for its service at the so-called "old rate" so that until such notice was given and the requirements of the statute in other respects complied with the rates fixed by the award continued in effect.

Chapter 207, among other things, provides: "No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules, or classifications, or service which have been filed and published by any public utility, except after thirty days' notice to the commissioners, which notice shall plainly state the changes proposed, provided, that the commissioners may, in their discretion and for good cause shown, allow changes upon less than the notice herein specified either in particular instances or by a general order applicable to special or peculiar conditions or circumstances." It seems to us that this statute can have no application in the instant case. The Board of Railroad Commissioners, acting pursuant to authority conferred by the legislature (see 1925 Supp. §§ 4609c1 et seq.) had fixed the rates for the service furnished by the defendant to the plaintiff. These rates were in effect when the arbitration agreement was entered into and the award was made by the arbitrators. Until some proper change was made no other rates were lawful. Defendant could charge no more and no less. Temporary rates are what their name implies. When the period of their duration is fixed by the rate-making body and that period expires, then the rates theretofore in effect again become effective. Otherwise there would be no object in fixing an expiration date. The award in the instant case provided that the rates fixed by it should "automatically terminate" on July 18, 1937. The rate schedule filed by the defendant pursuant to this award so provided. And when the schedule was approved and adopted by the commissioners the rates were noted in their records as automatically expiring on that date. Certainly the defendant could not thereafter fix any rates that it might choose. So since the rates fixed by the award automatically expired on July 18, 1937, there were none that could be charged other than those originally fixed by the commissioners. Accordingly, no notice other than that contained in the award was required and no proposed schedule other than that theretofore in effect pursuant to the commissioners' action was necessary.

The judgment appealed from is reversed and the case is remanded with directions that judgment be entered in conformity with this opinion.

MORRIS, BURR, and CHRISTIANSON, JJ., concur.

BURKE, J., did not participate.